Sohngen, J.
 

 This appeal is brought under authority of Section 5611-2, General Code, from a decision of '.the Board of Tax Appeals denying the application of
 
 *593
 
 The Phoenix Amusement Company, appellant herein, for a refund of sales taxes in the sum of $77.47, erroneously paid during the period from January 1, 1942, to December 31, 1944.
 

 Between those dates the .applicant owned vending machines located in Mt. Vernon, Ohio, from which it made five-cent sales of candy bars. At various times it paid sales taxes measured by such five-cent sales.
 

 On February 21, 1945, this court decided the case of
 
 Winslow-Spacarb, Inc.,
 
 v.
 
 Evatt, Tax Commr.,
 
 144 Ohio St., 471, 59 N. E. (2d), 924, in which it was held, in the-syllabus:
 

 “1. Section 5546-2, General Code, a part of the Ohio Sales Tax Act, levies an excise tax only on retail sales of tangible personal property selling at a price of nine cents or more.
 

 * # # * . «C
 

 “3. The retail sales of a vendor engaged exclusively in the making of separate sales of a, commodity at a price of less than nine cents per unit are not subject to a tax under Section 5546-2, General Code, and Section 5546-12a, General Code, does not apply to the sales of such vendor or to him. ’ ’
 

 On July 15, 1945, by virtue of the authority of Section 5546-8, General Code, the applicant filed with the Tax Commissioner a claim for refund of sales taxes paid on five-cent sales made between January 1, 1942, ‘and December 31, 1944. The application was denied by the Tax Commissioner and appeal was taken to the Board of Tax Appeals.
 

 The Board of Tax Appeals sustained the order of the Tax Commissioner, basing its decision on the fact that the application for refund had • not been made within 90 days after February 21, 1945, the date of the decision by this court in the case of
 
 Winslow-Spacarb, Inc.,
 
 v.
 
 Evatt, Tax Commr., supra.
 

 
 *594
 
 In the hearing before the Board of Tax Appeals, both the resident counsel for the applicant and its statutory agent in Ohio testified that prior to May 9, 1945, they had no knowledge of the decision of this court in the
 
 Winslow-Spacarb case.
 
 No witnesses were called on behalf of the Tax Commissioner, and none of the facts presented by the applicant are in dispute.
 

 The application for refund was filed within 90 days from May 9, 1945, the date on which applicant learned of the decision of this court in the
 
 Winslow-Spacarb case.
 

 A vendor or other taxpayer is granted authority to make application for a refund of sales taxes by virtue of Section 5546-8, General Code, which reads in part as follows:
 

 ''<«* * * The Treasurer of State shall redeem and pay for any unused or spoiled tax receipts at the net value thereof, and he shall refund to vendors the amount of taxes illegally or erroneously paid or paid on any illegal or erroneous assessment where the vendor has not reimbursed himself from the consumer. When such illegal or erroneous payment or assessment was not paid to a vendor but was paid directly to the Treasurer of State, or an agent of the Treasurer of State, by the consumer, the Treasurer of State shall make refund to the consumer. In all cases an application shall be filed with the Tax Commission on the form prescribed by it and must be filed within a period' of ninety days from the date the tax receipts are spoiled,
 
 or from the date it is ascertained that the assessment or payment was illegal or erroneous.
 
 On filing of such application the Tax Commission ■ of Ohio shall determine the amount of refund due and shall certify such amount to the Auditor of State. The Auditor of State shall thereupon draw a warrant
 
 *595
 
 for such certified amount on the Treasurer of State to the person claiming such refund. * * * ” (Italics ours.)
 

 In the instant case, we are concerned only with the interpretation of that part of Section 5546-8, General Code, which reads as follows: “In all cases an application shall be filed with the Tax Commission [now Tax Commissioner] on the form, prescribed by it and must be filed within a period of ninety days * * * from the date it is ascertained that the assessment or payment was illegal or erroneous.” '
 

 The Tax Commissioner contends that the date on which the 90-day period started to run was February 21, 1945, the date of the decision by this court in the.
 
 Winslow-Spacarb case;
 
 and that the application for refund having been filed on July 15, 1945, was not filed within the «90-day period prescribed in the statute.
 

 The applicant contends that the 90-day period prescribed in the statute started to run from the date the applicant knew (ascertained) that the assessments which it paid were erroneously paid and illegally collected; and that, since the application for refund was filed within 90 days from May 9, 1945, it was filed within the time prescribed'by the statute and should have been allowed.
 

 In approaching the problem of making a correct and reasonable interpretation of the provision of Section 5546-8, General Code, with respect to the time when the 90-day period starts to run, it should be borne in mind that the applicant is not trying to evade taxes or to leduce or minimize a fax assessment legally made, but is trying to recover tax moneys which never should have been collected in the first place. Taxpayers’ obligations for the payment of legally assessed taxes have become and are becoming increasingly burden
 
 *596
 
 some and, since the General Assembly has provided by Section 5546-8, General Code, for the refunding of sales-tax moneys illegally or erroneously collected, the writer of this opinion believes that when it is required to interpret the meaning of the refund provision of such section, a liberal construction should be given in favor of the vendor or taxpayer. It is reasonable to assume that the General Assembly in adopting the refund provision 'intended that the vendor’s or taxpayer’s knowledge of the facts which give rise to an application for a refund must be of importance. With this in mind, it reasonably follows'that the word, “ascertained,” in the statute refers to action or knowledge by the vendor or taxpayer and not to a decision of the Supreme Court of Ohio in a case to which the applicant was not a party and of which the applicant had no knowledge until more than 90 days after the decision was rendered. The Tax Commissioner, however, contends that the applicant was charged with the knowledge of the judgment in the
 
 Wmslow-Spacarb case,
 
 even though applicant was not a party to that action; and that this constructive notice created a bar to applicant’s right to recover the moneys paid, unleás it filed its application for refund within 90 days from that decision. This contention is not supported by decisions in Ohio.
 

 In 30 Ohio Jurisprudence, 202, Section 7, it is stated, ‘ ‘ so, ordinarily, a final decree of which one has no actual knowledge does not charge him with notice of rights established thereby.” Cited is
 
 Turner
 
 v.
 
 Cre
 
 bill, 1 Ohio, 372.
 

 In the proceeding of
 
 Cleveland Builders Supply Co.
 
 v.
 
 Evatt,
 
 Ohio B. T. A. (2-24-44), the Board of Tax Appeals had before it the same question under- the same statute involving the same word, “ascertained,” as is before this court now. In that proceeding, the
 
 *597
 
 theory that the vendor should have known that the assessment had been erroneously collected was founded on the idea that the vendor should have had knowledge of a decision of the Common Pleas Court, wherein a similiar transaction was held to be nontaxable.
 

 The Board of Tax Appeals in the Cleveland Builders Supply Co. proceeding, in speaking of the refund provision of Section 5546-8, General Code, stated in its journal entry:'
 

 “The word ‘ascertain’ means to acquire information, to become apprised of the existence of an undisputed fact and where facts are not disputed, to hear, try and determine; to establish with certainty or precision. 6 Corpus Juris Secundum, 787. The word imports definiteness, and in this particular instance the time would run when the appellant [vendor] learned of the fact that the assessment was illegal or erroneous and not from the date it should have known that the said taxes were cancelled in error.”
 

 Believing as we do that the provision of Section 5546-8, General Code, relating to refunds of tax moneys illegally or erroneously paid, should be liberally construed-in favor of the vendor or taxpayer, it is the opinion of this court that the fair, correct and reasonable interpretation of the language of the statute means ascertained by the vendor or taxpayer, and that the application for a refund was .filed within the time prescribed by the statute.
 

 Therefore the decision of the Board of Tax Appeals is unreasonable and unlawful and is accordingly reversed.
 

 Decision reversed.
 

 Matthias, Hart, Zimmerman and Stewart, JJ., concur.
 

 Turner, J., dissents.